## 9617.

### THE STATE EX REL. HEIRS OF GEE VS. R. C. DREW, JUDGE OF SECOND DISTRICT COURT, AND G. W. THOMPSON.

The writ of prohibition is the proper remedy to restrain a District Judge who attempts to enjoin the execution of a judgment rendered by the Supreme Court, on the alleged ground that said judgment is not yet final.

District Judges are absolutely powerless to judicially investigate and determine the validity of the official acts of any of the clerks of the Supreme Court. The certified copy of a judgment of this court issued by one of its clerks and forwarded to the court whence the appeal was taken, is the mandate of this court for the execution of the judgment, and it must be obeyed by the lower court.

That court has no power or authority to ascertain in an injunction proceeding or in any other mode whether the mandate issued properly or otherwise. Complaints for alleged errors of any of the clerks of this court, in issuing such certificates or in the performance of any of their official functions must be addressed to this court only ; the power to correct such errors is lodged in no other authority. A district judge will not be held in contempt for assuming powers which he honestly but erroneously believed to be of the essence of his court.

APPLICATION for Prohibition.

*Cunningham & Moise,* for the Relators.
*Watkins, Scarborough & Carver,* on the same side.

*Merrick, Foster & Merrick,* for the Respondents.

The opinion of the court was delivered by

POCHÉ, J. The following facts have given rise to these proceedings :

On the 26th of October, 1885, this court rendered at Shreveport a final judgment against G. W. Thompson, one of the respondents herein, in the matter of the "succession of B. L. Saunders, on opposition of

the Saunders heirs and of the Gee heirs," and that term of the court was adjourned at midnight on the next day.

On the 29th of the same month the clerk of this court, at Shrevepert, forwarded to the lower court a certified copy of the opinion and decree of the Supreme Court, on which execution was issued at the instance of the Gee heirs, relators herein, on the 4th of November following. That execution was enjoined on the 25th of the same month by the order of the Respondent Judge in injunction proceedings instituted by Thompson, the respondent herein, the defendant in execution under the decree of this court.

The substantial ground of the injunction is that our judgment was not final, and that the certified copy thereof had been prematurely issued by our clerk.

Relators charge that in entertaining Thompson's application for injunction the District Judge has exceeded the bounds of his jurisdiction, and that he has officiously and illegally impeded the execution of a mandate of this court, from which he should be prohibited, and for which he should be punished as in case of contempt.

Respondents, after disclaiming any intention of contempt of the authority of this Court, urge in their answer that the writ of prohibition is not the proper remedy, and that the District Court was fully vested with the legal power to enjoin the execution because it had been issued under a judgment not yet final.

Their grounds for the latter assertion are in substance as follows:

That when the clerk's copy of our judgment was issued, three judicial days had not elapsed since the day on which the judgment had been rendered.

They take cognizance of the fact that a waiver of two of the three judicial days granted by law for applications for rehearing at the county terms of the Supreme Court, had been made in writing, in common with all the attorneys having business before the court at that term, and in accordance with a long established custom as an acceptable courtesy to the members of this tribunal, by the law firm of "Watkins & Watkins," whose names were attached to the brief, who were attorneys of record in the case, and by one of whom the cause was orally argued before the court. But they deny the right, and even the intention of the members of that law firm to bind the respondent Thompson by the waiver in question. Their contention is that the firm of "Jack & Dismukes" were the only authorized attorneys of Thompson in the case, and that "Watkins & Watkins" had been connected with the suit by "Jack & Dismukes" as their representa-

tives, and had never been employed as counsel by Thompson. These allegations are supported by affidavits subscribed by J. D. Watkins, the senior member of "Watkins & Watkins," and by W. H. Jack, the senior member of the firm of "Jack & Dismukes."

But, in justice to relators, and in justification of our own course, in allowing J. D. Watkins, Esq., to present an oral argument in the cause, we must state that by inspection of the briefs in the case, of the transcript, of our docket, of our minutes, and of the petition of appeal, which is part of this record, it appears that the firm of "Watkins & Watkins" figured in the case throughout as the counsel of Thompson and not otherwise. The answer to both of the propositions which are discussed by the counsel is suggested by a consideration of the pivotal ground of the injunction.

No complaint is made of the mode of execution, and no error is suggested as to the manner of executing the writ, after its issuance from the District Court, or in the order of the clerk for execution.

The substantial and exclusive complaint is that our judgment was not yet final for the reasons which we have herein above stated in detail, and that therefore our clerk at Shreveport had committed an error in prematurely issuing the certified copy of the opinion and decree of this court which is the only mandate to the District Court for the purpose of proceeding to the execution of the judgment. C. P. Art. 915. As soon as this certified copy reaches the court whence the appeal had been taken, that court is fully empowered, and can be required without option on its part, and without further orders from this court, to issue execution of the judgment which has been rendered here.

Under the textual provisions of the Code, the certified copy of the judgment of this court, forwarded to the lower court by our clerk, is the mandate of this court for the execution of the judgment which it has rendered.

"The functions of the District Court in relation to a mandate which has issued from this court to have a judgement executed, are merely ministerial. It cannot render any new judgment which would authorize or render an appeal necessary." State ex rel. Bank vs. Mayor, 35 Ann. 408; Lovelace vs. Taylor, 6 Rob. 92; Cox's Executors vs. Thomas, 11 La. 366.

It follows from these rules and principles which find their strongest sanction in common sense and in natural order, that the District Court to which a mandate from this court has thus issued has no other alternative but to obey its behest, and that it has no power to examine into

our minutes or records to ascertain or determine the manner in which our clerk executes our orders, or performs his legal functions.

If that officer commits a wrong, or unjustly deprives a party of his legal rights, he is amenable to this tribunal and to no other power, and it is to this court alone that complaints against him for any alleged wrong should be addressed. Whence does the District Court of Bossier parish derive its power to judicially control the clerk of the Supreme Court? Whence comes its authority to say to this court, "Your judgment is not final, hence I must decline to obey your mandate which directs its execution?"

It is too plain for further argument that District Courts are utterly and absolutely powerless to entertain, by means of injunctions any complaint of alleged errors of one of the clerks of the Supreme Court. We can but repeat that these clerks, in the performance of their official duties are exclusively under the control of, and amenable only to, the court whence they hold their appointments.

We note the great reliance placed by respondents and their counsel in our recent decision in the case of Sentell vs. Judge, not yet reported. The grounds on which the District Judge rested his injunction in that case were alleged errors charged against the sheriff for acts committed or omitted *after* the writ had been placed in his hands; but in the instant case the complaint charges errors committed in this court, before execution had been ordered, and in the very proceedings which were intended to direct the execution of the decree of this court. We quote the following language from the Sentell case: "If the injunction issued was based on any grounds assailing the plenary authority of our judgment or its absolute title to be executed according to law, the contention might have force. But we have examined the petition for injunction and we find no such questions raised. The attack is leveled exclusively against the form of the writ and the proceedings under the writ."

As it is very clear that the injunction issued in this case places the District Judge in the attitude of regulating the proceedings of this court, and of controlling the official acts of one of our clerks, it is equally undeniable that he has exceeded the bounds of his jurisdiction, hence the writ of prohibition is the proper remedy, and it must therefore issue.

Having thus concluded that the Respondent Judge had no power or authority to issue the injunction complained of, it becomes unnecessary to judicially consider the validity of the reasons urged therefor by the respondent Thompson. Until the proper proceeding is resorted to we

are spared the painful duty of deciding how far an attorney of record' can be allowed to repudiate the legal effects of his own acts; how far he may be counsel for certain purposes and not for others in the progress of a suit; and to what extent a litigant may be allowed to divide the responsibility of counsel who appear of record in his cases. We must now dispose of the rule for contempt.

From our knowledge of the character of the Respondent Judge we are satisfied and quite confident that he had not the remotest intention of resisting the authority of this court.

The palpable error which he has committed arises from a confused' idea of the line of demarcation between his authority and that of the Supreme Court, and is doubtless the result of hasty conclusions on a question which was perhaps new to his legal mind. The law does not contemplate the correction of such errors by rigorous punishment. But as the repetition of such errors would doubtless have a tendency to hamper the speedy administration of justice in the State, we entertain the reasonable hope that we will not often be called to correct similar irregularities.

It is therefore ordered that the preliminary writ of prohibition issued herein be made perpetual, and that the respondents be forever restrained from enforcing the injunction granted by the Respondent Judge in the matter of the execution of the judgment of this court rendered on the 26th of October, 1885, in the case entitled "The Succession of B. L. Saunders on opposition of the Saunders heirs and of the Gee heirs." It is further ordered that the rule taken herein for contempt against the respondents be discharged; and that respondents be condemned to pay all costs of these proceedings.