*MELANCTON'S HEIRS vs. BROUSSARD & AL.*

APPEAL FROM THE COURT OF THE FIFTH JUDICIAL DIS=
TRICT, THE JUDGE OE THE SEVENTH PRESIDING.

An action of nullity cannot be instituted in the District Court, to set aside and annul a judgment of the Supreme Court.

The District Court cannot take jurisdiction and sustain an action of nullity to set aside one of its own judgments, after it has been passed upon by the Supreme Court, whether it be affirmed or not.

This suit was instituted the 2d of April, 1825, by the heirs and widow of Charles Melançon, deceased, against Pierre Broussard and Dr. John Duhamel to set aside and declare null and void a judgment of the Supreme Court, rendered in favor of said Broussard against Duhamel, in which Melançon's heirs were cited by Duhamel in warranty, which judgment is alleged to have been obtained by *fraud* and *collusion*.

Western District.
September, 1830.

MELANÇON'S
HEIRS,
vs.
BROUSSARD
& AL.

The present plaintiffs instituted suit May 15, 1822, against Dr. John Duhamel and his security Joseph Latiolais, in the parish of St. Martin, to recover $3,085, it being the second instalment of the price of a tract of land, 5 arpents front with the depth of 40, 'purchased by Duhamel at the sale of Melançon's succession.

Five days after the commencement of this suit, Pierre Broussard instituted a suit against Dr. Duhamel for three and a half arpents of this very land, which Duhamel had bought at the sale of Melançon's succession. Duhamel caused the heirs of the succession to be cited in warranty. They appeared—filed an answer—plead the general issue, and prescription of thirty, and ten years.

The five arpents' tract, now in dispute, for the second instalment of the purchase money of which Duhamel was also sued, had been originally the part of a forty arpents' tract belonging to the succession of one Le Dee, but had been partitioned out among several co-proprietors, among whom was Chas. Melançon, who had purchased of Le Dee's succession. One François Gonsoulin had been employed in 1799 to make this partition and division. He made out an exact plot and survey, marking all the lines between the co-proprietors.

Among other parcels of this division, the five arpent's tract, since sold at the sale of Melançon's succession to Dr. Duhamel, was included. This plot of survey contained a proces-verbal of the partition, and complete evidence of all the boundaries and lines of the several tracts into which the original one had been sub-divided. Pierre Broussard, also a co-proprietor of one of the tracts, with all the co-proprietors had assented to this proces-verbal of survey and partition in writing, by affixing their signatures. This book of survey containing complete evidence of all the boundaries between, and assented to by all the co-proprietors, was deposited with Gonsoulin. At the trial of the cause between

B

Western District.
September, 1830.

MELANÇON'S
HEIRS,
vs.
BROUSSARD
& AL.

Broussard and Duhamel and the present plaintiffs who were called in warranty, an attempt was made to procure this book of survey to prove the true boundaries between the parties. It could not be had. Gonsoulin was dead— his widow and heirs stated the book had been sent to New-Orleans, but could not recollect to whom. Melançon's heirs, who were defending for Duhamel, suspecting some fraud and concealment applied twice, but without success. They had to submit to a trial without this book or document, by which alone they could have proved the survey and boundary of the five arpent's tract, made to their ancestor with Broussard's consent. They however obtained judgment in the District Court, quieting Duhamel in his possession. But on an appeal to the Supreme Court, the judgment of the District Court was reversed, and Broussard succeeded in evicting Duhamel of three and a half arpens of the land he purchased of Melançon's succession.

The chief ground of reversal was " that it did not appear that the land of Le Dee (the original tract) was ever regularly and entirely *laid out and partitioned amongst all the purchasers.*" *&c.* This matter would have been completely explained by the production of *the last book of survey*.

The petitioners charge Broussard and Duhamel with *collusion* and *fraud,* and shew that suit was brought by Broussard against Duhamel with the consent and at the request of the latter, supposed to enable him to resist the payment of the last instalment of the price of the land ; and also that Broussard's attorney agreed if he would permit the suit to be brought in his name, he would exempt him from the payment of fees and costs. The petitioners further charged fraud and collusion on Duhamel, Broussard and Gonsoulin's heirs in concealing and suppressing the *book of survey.*

The petitioners pray for the *annulment* of the judgment of the Supreme Court and for the restitution of the property.

Pierre Broussard answered by avering that the three and a half arpens of land were rightfully decreed to him by the Supreme Court denying all *fraud* and *collusion.* An order of Court was made, requiring the widow or heirs of Gonsoulin to produce the *lost* book of survey within *two* days. And soon afterwards, on the 26th. of January 1827, Pierre Broussard executed an act of *renunciation, in which he acknowledged the existence of Gonsoulin's book of survey; and that he examined it and found the partition with the lines of the several tracks marked and surveyed; and that he had signed and approved the proces-verbal of survey*; and now to put an end to all difficulties, he *renounced* all advantage arising from the judgment against Duhamel *and voluntarily consented* that it be *cancelled and annulled.*

By this time, Duhamel was dead and his estate insolvent· The curator of his vacant succession, in answer to an amended petition of the plaintiffs, setting up the act of renunciation of Pierre Broussard, charged said act as *collusive* between Broussard and the petitioners, being obtained by threats and pecuniary aid. He also plead that the decree of the Supreme Court between Broussard and Duhamel was final, in as much as Duhamel was evicted and disposessed of the land.

Joseph Latiolais, the security of Duhamel, in the purchase of the five arpents' tract, at the sale of Melançon's succession, now intervened. He charged *collusion* and *fraud,* in making the act of renunciation by Broussard—prayed that the judgment of the Supreme Court, which is attacked in this suit may *stand,* and that he be released from his securityship in consequence thereof.

The District Court gave judgment for the plaintiffs *annulling* the judgment of the Supreme Court in favor of Broussard against Duhamel, as having been obtained thro' fraud and collusion : and also on the ground that Pierre

Western Distiict.
September, 1830.

MELANÇON'S
HEIRS,
*vs*
BROUSSARD
& AL.

Western District.
September, 1880.

MELANÇON'S
HEIRS,
vs.
BROUSSARD
& AL.

Broussard having renounced "*all right and advantage arising under it.*"

Dumartrait the curator of Duhamel's vacant estate appealed.

*Brownson & Bowen* for plaintiffs.

Mr. *Brownson* submitted the following argument.

It is urged, that no action of nullity can be maintained in this case, because the judgment, sought to be annulled, was rendered in the Supreme Court : but that such suits must be brought before the tribunal which pronounced the judgment intended to be annulled——*Code of Practice Art.* 608. 611 *and* 611.

The present suit was commenced before the Code of Practice had been adopted ; but if it had not, it is conceived that this law does not impair the right to maintain such an action. ——*Code of Practice, Art.* 607.

When the nullity is apparent on the record, it can be claimed on appeal.—*Ibid. Art.* 609.

Every judgment of this Court, when given on the merits, is such as the inferior tribunal ought to have rendered.

It is in fact considered for all effective purposes as the judgment of the inferior tribunal. It is pronounced on the facts certified by the lower Court, and then sent down to be investigated and executed as one of its own judgments.

To annul a judgment of this Court, a suit cannot be originated here, yet it is believed that one may be instituted in that Court, whose judgment this tribunal is required to pronounce. Let it be observed that the Code of Practice in giving a right to maintain such an action, states affirmatively and in general terms where it may be brought. The Code imposes no limitation upon the exercice of the right itself. On the contrary, it says generally that such an action *may be maintained* not to avoid or annul judgments of the District Court only, *but all judgments fraudulently obtained.*

Western District.
September, 1830.

MELANÇON's
HEIRS,
vs.
BROUSSARD
& AL.

In saying that the action of nullity may be demanded from the same court, which rendered the original judgment, it does not say that it may *not* be demanded in any case elsewhere. There is no very obvious reason for applying here the maxim *inclusio unius exclusis alterius.*

To attack a judgment procured by the fraudulent conduct of the party, tho' formally pronounced by this Court, implies no disrespect of its opinions. No good reason of justice or policy occurs to us for making this honorable tribunal the favored instrument to perpetuate fraud.

Under the spanish law, the reason for commencing such suits in the Court whose judgment was attacked applied as well to Courts of *Appellate,* as to those of *original* jurisdiction. The trial in the Appellate Court was had *de novo.* Feb. Ad. Part 2. Lib. 3. Cap. 1. sec. 13. No. 462. The right to institute such an action, was well understood in Spain. Ibid. No. 491.

The three following cases are specified:

" 1º. Quando él que fué condenado en ella hallo *posteriormente* nuevos *instrumentos ; pues aunque sea mayor de 25 anos, puede pretender se rescinda por via de restitucion, la cual le compete para la clausula general, si qua mihi alia causa justa isse videbitur y debe diferirse a ella por la ignorancia y legitimo impedimento que tuvo para no haberles producido.*"

" 10º. *Quando él que obtuvo la sentencia confiesa que es injusta, pues la prescension de derecho que tenia a su favor usa por su confesion.*"

11º. *Quando se dio pruebas falsas de testigos o instrumentos, y no se alego ni conocio de su falsedad, en cuyo caso, el agraviado ha de pedir el mismo juez por via de restitucion, que rescinda su sentencia, citando a la parte contraria, lo cual debe hacerse prueba la falsedad en lo que forma, y para alegar y probarla, le concede la ley veinte anos y no mas.*"— *Vide* also *Cur. Phil. Sent. No.* 12.

Western District.
September, 1830.

MELANÇON'S
HEIRS,
vs.
BROUSSARD
& AL.

When it is proper to bring the action in the superior and when in the inferior Court, will be seen on reference to the same title, No. 15.

In the case now before the Court, the party obtaining the first judgment, has renounced all the advantages resulting from it and specially consented in writing that it may be annulled.

The motive for this renunciation and agreement, is in substance that the judgment was unjustly obtained. We have seen that by the spanish law such a confession without any express agreement or renunciation, would be sufficient to authorise a claim of nullity. That law can be cited to shew that a party may not renounce a mere private advantage.

Has the District Court erred in carrying into effect the express agreement of the parties?

*Simon* and *Mazureau* for defendant.

This suit is brought to annul a judgment rendered by the Supreme Court, which judgment is reported in 3 Mar. N. S. 11.

1. The grounds of nullity are fraud and collusion between the plaintiff and Duhamel in the original suit, and the discovery of a document alledged to have been concealed by the parties. It was a principle of the spanish law that *sententia tenet nec rescinditur pretender instrumentorum posteor repertorum.*—Greg. Lopez.

2. The judgment of this Court, which is sought to be annulled, had reversed the judgment of the lower tribunal; so that the judgment attacked is not the judgment of the District Court, but the judgment of a Court of appellate jurisdiction.

3. The action of nullity cannot be maintained, as it ought to be brought before the same tribunal—the *same* Court which had *rendered it*. And as the Supreme Court has no original jurisdiction, there is absolute impossibility of attack-

ing its judgments by way of an action of nullity. The law was so under the spanish codes,—it is so under our Code. The present suit must be dismissed, and the judgment attacked allowed to have its full force and effect.—Partida 3. Lib. 22. Law 19.—Ley 6 and 8—tit. 17. Lib. 4. Recopilacion.—And Ley 4. Tit. 21. Lib. 4.—ibid. Ley 19 and 24. Tit. 9. Lib. 3. Recop. Code of Practice, Art. 608, 610 and 611.

Western District.
*September* 1830.

MELANÇON'S
HEIRS,
*vs.*
BROUSSARD
& AL.

4. There are only two ways of annulling a judgment.

1. By taking an appeal. 2. When no appeal has been taken, by bringing an action of nullity before the *same tribunal* which has rendered the judgment sought to be annulled.

5. If judgments could be otherwise annulled, there would be no certainty in judgments rendered by this Court. Actions of nullity would be often brought against them, if not with the hope of annulling them, they would be resorted to for the purpose of suspending execution and causing delay.

*Martin* J. delivered the opinion of the Court.

The defendants and appellants complain of the judgment of the District Court, which sustained an action of nullity against and actually set aside a judgment of this Court. They rely on the Code of Practice, Art. 608—which requires the action of nullity to be brought in the Court which rendered it, or the Court of Appeal before which the appeal from such a judgment was taken.

Hence it is urged that whenever a judgment has been appealed from, the Court which rendered it, is no longer competent to give a remedy on an action of nullity.—Code of Practice. Art. 611.

But the Appellee's Counsel urges that as this Court possesses no original jurisdiction, and is incapable of receiving any from the Legislature—its judgments may be attacked on the score of nullity, in the Court which rendered the judgment appealed from, whether affirmed or reversed by this Court.

An action of nullity cannot be instituted in the District Court, to set aside and annul a judgment of the Supreme Court.

The District Court cannot take jurisdiction and sustain

Western District.
September, 1830.

MELANÇON'S
HEIRS
*vs.*
BROUSSARD
& AL.

an action of nullity to set aside one of its own judgments, after it has been passed upon by the Supreme Court, whether it be affirmed or reversed.

This appears to us a *non sequitur.* The Legislature has not given jurisdiction to the District Court, and it cannot assume it.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be annulled, avoided and reversed : and the plaintiff's action dismissed—they paying costs in both courts.