No. 9382.

SUCCESSION OF THOMAS J. MARTIN vs. SUCCESSION OF PHILIP HOGGATT.

The delay of two years granted to non-residents for the purpose of appealing from a judgment rendered by the courts of this State, under the provisions of Article 593 of the Code of Practice, is not affected by the death of the non-resident who is cast in a suit ; but this right, like all others, is transmitted to his legal representatives, even though his succession is administered in this State by a resident admistrator.

The provisions of that article apply as well to plaintiffs as to defendants who are non-residents.

The attempt of a district court to annul a judgment of the Supreme Court, is a most dangerous usurpation of authority which cannot and will not be tolerated in this State.

A PPEAL from the Eighth District Court Parish of Madison. *Deloney, J.*

*Wade R. Young* and *James T. Coleman* for Plaintiff and Appellant.

*John B. Stone* and *J. C. Hawkes* for Defendant and Appellee.

The opinion of the Court was delivered by

POCHÉ, J.    Before his death, Thomas J. Martin obtained in this Court a moneyed judgment against the defendant succession, *in solido*, with another defendant, on a lease-bond signed by Philip Hoggatt as surety.

On the 15th of May, 1882, he proceeded by rule in the district court for the enforcement of his judgment and for a sale of succession property; he was met by an answer setting up the absolute nullity of his judgment.    The plea was maintained and his rule was discharged by a judgment rendered on January 12, 1883.

On the same day, through his counsel by motion in open court, he obtained an order of appeal from said judgment.

On the next day, January 13, he died in Louisville, Kentucky, the place of his residence.

On the 19th of the same month, a judgment was rendered rescinding the order of appeal of the 12th, on the ground of his alleged acquiescence in the judgment appealed from.

An appeal under a bond executed by his attorney was subsequently brought up to this Court, and was stricken from our docket for the reason that he was dead and his succession unrepresented. 35 Ann. 386.

A. W. Crandell, in his capacity of administrator of the subsequently appointed succession, then applied for an ῾appeal from the two judgments, of January 12th and of January 19th, but obtained an order from the latter only.    That appeal resulted in the reversal of the judgment of January 19th, which purported to rescind the order of appeal of January 12th, obtained for Martin the day before his death.  36 Ann. 337.

On the 2d of October, 1884, A. W. Crandell, administrator, obtained an order of appeal from the judgment of January 12, 1883, on a petition, in which he recited substantially the foregoing facts, and in which he averred that the appeal taken for Martin before his death had lapsed, but that as a non-resident the latter was legally entitled to an appeal, if applied for within two years of the rendition of the judgment.

The grounds of the motion to dismiss that appeal are:

1.   Want of capacity of Crandell to prosecute the appeal, on account of his failure to produce the evidence of his appointment and of his qualification.

2.   The prescription of one year in bar of the right of the succession to appeal.

The first ground of the motion is easily met by the suggestion that it is urged too late and not in the proper tribunal. It should have been urged in the district court where Crandell obtained his first order of appeal, of January 14, 1884. The remedy was by a motion to rescind the order of appeal, on the ground now urged here. It would have presented an issue under which evidence could have been produced and discussed between    parties.

But in the order of appeal of January 14, 1884, Crandell was specially recognized by the district court as the administrator of the Martin succession, and formally authorized to prosecute the suit of Martin vs. Succession of Hoggatt. Hence we conclude that the objection comes too late, and is frivolous.

The second ground involves two propositions; the first, that the delay for appealing granted by Art, 593, Code of Practice, to non-residents, applies only when they are defendants. The best answer to that argument is the text of the article; it makes no distinction between one class of non-residents and another, and the courts can make none. The argument, showing the reasons for the distinction, might be proper on a proposed amendment to the article; it can have no force in a court of justice. Beaird vs. Russ. 34 Ann. 315,

The second propositon rests on the argument that the succession of Thomas J. Martin, as represented by Crandell, is a home succession, and hence it cannot claim the rights of non-residents under Article 593 of our Code of Practice.

. If Martin was yet alive, his right to appeal within the two years could not be questioned. Are we to hold that because his estate has been admitted to administration in the parish of Madison, his succession has been stripped of any rights which he could claim if living? The mere statement of the proposition is its best refutation. There is no more reason in the contention that Crandell is, in the language of the article, "the party claiming the same," and that as a resident he cannot invoke the additional delay for appealing. The application is made in his representative capacity, and it is in fact and in law the appeal taken by the succession of Thomas J. Martin, to which his right to the delay of two years has been transmitted. Personally, Crandell

could not appeal in his own right; in these proceedings he is the mere instrument of the succession.

The identical position now occupied by the defendant was assumed by the appellee in the case of Krauster vs. Bank, 12 Rob. 456. He was answered as follows :

"The petition of appeal, it is true, is in the name of the attorney appointed to represent the bank, but he alleges that the error in the judgment is to the prejudice of defendants. We do not look so much to the form as to the substance, and no one can hesitate in saying that the appeal is that of the bank. The attorney as such has no such interest known to us as will authorize him to appeal separately from those he represents."

If Martin was yet alive, and represented in Madison by an attorney in fact of that residence, it is evident that the appeal taken by the attorney in fact would be Martin's—just as the present appeal taken by Crandell, who is the agent of the succession of Martin, with its domicile in Louisville, Kentucky, is the appeal of the succession.

The motion to dismiss is, therefore, overruled.

## On the Merits.

The attitude of the case simply presents the spectacle of a district court annulling the judgment of the Supreme Court. Is there any need of arguments or reference to authorities to demonstrate the presumptuous folly of such a proceeding? As well, and with as much grace, could a justice of the peace in the parish of Madison attempt to annull a judgment of the district court of the parish.

The coolness with which counsel for appellee claim that power for the district judge in the premises, can only be equalled by the boldness with which the judge entered into the spirit of the venture.

The feat had not been attempted since the year 1830, when it was conceived in the case of Melançon's Heirs vs. Bronssard, 2d La., p. 9. Although the nullity was sued for in a direct action, and not collaterally as in the instant case, our predecessors disproved of the scheme in a very summary manner. The Court said : "The legislature has not given jurisdiction to the district court, and it cannot assume it." To a suggestion that there was error in one of our final judgments, made in the case of Turley vs. Dreyfus, 35 Ann. 510, we answered : "We find no reason to question the correctness of our conclusions on the subject ; but were it otherwise, our decree is final and beyond review—so far as it affects the rights of the parties to this cause. Arguments, now made,

assailing its correctness come too late and need no further notice at our hands."

In the present case we are thoroughly satisfied of the correctness of our judgment which has been so unceremoniously assailed, but under a proper sense of our duty, we must decline to enter into the arena for the purpose of defending its legal existence.

It is, therefore, ordered that the judgment appealed from be annulled, avoided and reversed, and that this case be remanded to the lower court for further proceedings according to law and to the views herein expressed ; costs of appeal to be paid by the defendant succession, costs below to abide the final determination of the cause.

Todd, J. dissents from the decree overruling the motion to dismiss.

### On Application for Rehearing.

We have given due and respectful consideration to the earnest application to re-open this case. After a thorough examination of the jurisprudence bearing on the two points in the controversy, we have concluded to adhere to our original decree.

The question involving the power or mode of reviewing a final judgment of this Court, on the ground of its alleged absolute nullity, is one of great delicacy and of no less importance, which is not provided for by legislation, and which has not often been considered in our jurisprudence.

Strong arguments may be urged in favor of either side of the question, and equity might suggest the propriety of such a review, and might be enhanced by proper legislation on the subject. But under no possible circumstances could a judgment of this Court be reviewed by a district court in the manner proposed in the present instance. The identical ground of nullity on which our judgment was held to be of no force by the lower court, had been suggested in bar of plaintiff's right of recovery, had been considered by us, and disposed of as insufficient for the end proposed by the defendant.

That element of nullity was therefore no longer an open question, and could not be considered as an oversight of the appellate tribunal. The claim that such a point could subsequently be reviewed by the court *a qua*, involves the exercise of a power which cannot be lodged in the lower tribunal, and its new recognition, as urged herein, would soon revolutionize jurisprudence, and strip the judgment of the courts of final resort of that force and certainty which can alone make them efficient.

The application for rehearing is therefore denied.

## CONCURRENT OPINION.

BERMUDEZ, C. J.   The refusal of the rehearing leaves the judgment rendered intact.   That judgment reverses that appealed from and remands the case for further proceedings.

The controversy is on a rule for the sale of succession property to satisfy a claim recognized by judgment of this Court.   The defense is that this judgment is an absolute nullity.

Without assigning any reasons, the district court dismissed the rule. The judgment thus rendered was reversed, because that court had no jurisdiction to annul a judgment of this Court, and *not* because the judge had ruled erroneously on the validity or invalidity of the judgment attacked.

Further examination shows that, after the answer had been filed to the rule charging the nullity of the judgment, the plaintiff in rule moved to reinstate the case for trial, in which, on appeal, this Court rendered judgment against the succession of Hoggatt.   The judgment appealed from was rendered *after* this motion had been made.

That motion apparently implied an admission of the nullity of the judgment of this Court by the party in whose favor it was rendered.

In the face of such admission, the district judge could not arrive at a conclusion different from that which he reached in dismissing the rule, which was based on a judgment the nullity of which the plaintiff therein had thus admitted.

As it does not appear from the record that the district judge has annulled a judgment of this Court, and as the case is remanded, an opportunity will be offered him, on the trial of the rule, to state the reasons justifying his course.

I am not ready to subscribe to the proposition that a district court can in no conceivable contingency either annul or treat as null a judgment of this Court.

I think that where a judgment of this Court is an absolute nullity on the face of the record, the party aggrieved thereby is not left without adequate remedy to be relieved from its effect.

I therefore concur in the decree refusing the rehearing, not because a district court has no jurisdiction to annul a judgment of this Court in a proper case and in a proper proceeding, but because that decree produces the effect that the rule to sell property, etc., is remanded to the lower court for further proceedings and an opportunity is thus offered to the district judge to adduce reasons in support of his action.

## DISSENTING OPINION.

Todd, J. I think a rehearing should be granted in this case.

I am satisfied that, where a judgment of the Supreme is an absolute nullity, a district judge has the power and authority to so declare it in a proper proceeding.

In this case there was a rule taken to cause the sale of the property of Hoggatt's succession to pay a judgment of the Supreme Court against said succession.

The rule was opposed on the ground that said judgment was absolutely null. The issue touching the alleged nullity was thus directly raised and not in a collateral manner, and if this nullity was apparent from the face of the record of the proceedings in the case, the judge had not only the right, but was bound so to declare it. I think this proposition is supported by the decision of this Court in the cases of Edwards vs. Edwards, 29 Ann. 597; Grivot vs. State Bank, 31 Ann. 468; Walker vs. Baretti, 32 Ann. 1159.

I am further satisfied from a critical examination of the record referred to and which was before the judge of the first instance, that the judgment sought to be enforced by the rule in question was an absolute nullity and was properly so declared.

I therefore dissent from the refusal of the majority to grant a rehearing of the case.