The judgment appealed from is therefore affirmed.

O'NIELL, J., takes no part.

---

(65 South. 17)

No. 19,099.

GAJAN et al. v. PATOUT & BURGUIERES. Interventions of L. P. PATOUT CO., Limited, et al.

(March 30, 1914. Rehearing Denied April 27, 1914.)

*(Syllabus by the Court.)*

1. COURTS (§ 136*)—JURISDICTION—DISTRICT COURTS.

The Constitution confers upon the Supreme Court jurisdiction to review the judgments of the Courts of Appeal and the district courts, and further declares that it "shall have control and general supervision over all inferior courts." No jurisdiction to review, or hinder the execution of, the judgments of the Supreme Court is conferred on the district courts.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 375, 379, 392; Dec. Dig. § 136.*]

2. EXECUTION (§ 171*)—INJUNCTION—RIGHT OF ACTION.

Where, under a judgment and execution against one person, the sheriff seizes the property of another, the owner may enjoin the seizure; but that is because, there being no judgment against the owner, and the sheriff having no authority, under the writ, to seize his

property, he is not executing the judgment in so doing, but is committing a trespass.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 497–518; Dec. Dig. § 171.*]

**3. JUDGMENT (§§ 707, 739*)—RES JUDICATA— RIGHTS OF PROPERTY.**

Where two persons litigate titles, set up by them, respectively, to particular property, and it is decreed to belong to one of them, though in fact it belongs to a third person, not a party to the suit, such third person may thereafter either sue for the property himself, or he may transfer his right to the party cast in the litigation, or to another, who may then exercise it, and renew the litigation for the vindication of the title thus acquired.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1105, 1230, 1267; Dec. Dig. §§ 707, 739.*]

**4. JUDGMENT (§§ 707, 729*)—CONCLUSIVENESS —THIRD PERSON.**

A litigation is not conclusive as against those who are not parties to it, or as to rights not possessed by the litigants, at the time, save in the cases of parties who are the privies of each other.

But a party litigant, whether plaintiff or defendant, is bound to set up whatever title or defense may be at his command, or within his knowledge, and is not at liberty to reserve what he pleases and make it the basis of a new litigation.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1230, 1262; Dec. Dig. §§ 707, 729.*]

**5. INJUNCTION (§ 38*)—DISPOSITION OF PROP- ERTY—THIRD PERSON CLAIMANT.**

Article 302, C. P., has no application to the case of a third person claiming property the title to which he has already claimed, by a suit which he has lost, unless it be that his new claim is based upon a new title, acquired too late for the purposes of such suit.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 86–90; Dec. Dig § 38.*]

Provosty, J., dissenting.

Action by Emile Gajan and another against Patout & Burguieres, in which the L. P. Patout Company, Limited, and also the liquidators of the State National Bank of New Orleans, filed third interventions and oppositions. A rule for contempt was filed by the liquidators, upon which an order was made directed to the L. P. Patout Company, Limited, and its president. Rule made absolute in certain particulars.

Merrick, Gensler & Schwarz, of New Orleans, for liquidators of bank. R. E. Milling, of New Orleans, E. T. Weeks, of New Iberia, and Howe, Fenner, Spencer & Cocke and Edgar H. Farrar, all of New Orleans, for respondent L. P. Patout Co., Ltd.

Rule for Contempt.

MONROE, J. The circumstances leading to this rule are, in part, narrated in the original opinion handed down in the above-entitled suit, and reported in 133 La. 1060, 63 South. 585. Those which, for a clear understanding of the present situation, need be here recited, are as follows:

In 1906 the planting firm of Patout & Burguieres, composed of Mrs. Marie Olive Suberbielle, widow of L. P. Patout, and L. J. Burguieres, borrowed $50,000 from A. Adler & Co. for the making of a crop of sugar upon Vacherie plantation in the parish of St. Mary, and they gave their note for that amount, secured by mortgage upon the plantation. In 1908 the Seaboard National Bank of New York, appearing as the holder of the note, caused executory process to issue, under which the plantation was seized and advertised for sale. Pending the seizure, the sheriff made demands for money, wherewith to defray the expense of operating the plantation, and, as the note belonged to the State National Bank, its liquidators made the advances required, to an amount exceeding $12,-000, which, with other money advanced by the sheriff himself, made a total of over $14,-000 of costs expended. The property was advertised to be sold on July 11, 1908, but before that day was reached, the liquidators sold the note sued on to Emile Gajan and others, associated with him. The property was, however, offered, as advertised, on July 11th, and was adjudicated to A. D. Kemper, acting for Gajan and his associates, for $130,000, but the parties interested concluded, upon inquiry, that the amount bid was in-

sufficient to satisfy the mortgages and privileges (including the bill of costs to which we have referred), which primed the mortgage of the seizing creditor, and by common consent the adjudication to Kemper was held to be void. Gajan et al. then abandoned the writ of seizure and sale which had been issued, and the property reverted to the possession of Patout & Burguieres; but a few months later they (Gajan et al.) caused another writ to issue, under which it was again seized and advertised, to be sold on October 17th following. On October 13th the liquidators intervened in the proceeding, asserting a lien on the crop for the advances which had been made by them, to the sheriff, and praying that the crop be appraised and sold separately, and that the sheriff be ordered to retain sufficient of the proceeds to meet their demands, and the separate appraisement and retention were ordered, with the result that, when the sale was made, the sheriff retained $15,000, of which he still holds the proportion attributable to the claim of the liquidators; the amount so held being the subject of the present controversy.

While the property was being advertised, Gajan, plaintiff in the seizure, Mrs. Patout, defendant, and J. Paul Suberbielle, Mrs. Patout's brother, and others entered into an agreement to bid it in, through Preston King, and, in the event of its being adjudicated to King, to form two corporations, the one to take the sugar factory and its appurtenances, and the other to take the remainder of the estate. In contemplation of their proposed action the parties whom King was to represent applied to the counsel representing the sheriff for information as to the amount of the bid that would be required to cover the ranking mortgages and privileges, and a statement was exhibited to them showing that amount to have been $141,463, the first item upon the statement, being $12,436.56, appearing as due to the liquidators; and

thereafter the adjudication was made to King at $142,000.

On the day of the sale, there were recorded against the property, as priming the mortgage under which the sale was made, the following claims, to wit: Louis Levy, $21,477.03; Minors Patout, $34,471.75, with interest amounting to $10,473.18; Payne and Joubert, $56,199.75; Bank of Baldwin, $1,619.70; A. Hansen Lumber Company, $6,193.66; costs advanced by sheriff and seizing creditors, $14,065.83. The parties whom King represented appear, about that time, to have organized the L. P. Patout Company, Limited, which took over the entire property, and thereafter conveyed the refinery and appurtenant land to another newly created corporation. The liquidators had intervened, before the sale, to assert their claim against the proceeds; Louis Levy filed an intervention on the day of the sale, for a like purpose; Gajan and his associates answered the intervention of the liquidators on April 17, 1909, and filed amended answers, afterwards contesting the claim of the liquidators, asserting that, as owners of the $50,000 note sued on, they were entitled to a certain balance of (say) $17,000, in the hands of the sheriff, and that the makers of the note remained their ordinary debtors for a further balance of $38,000, and Patout & Burguieres, also, and on the same day answered the intervention of the liquidators, adopting the answer that had been filed by Gajan et al., so far as it denied any right of recovery in the liquidators. On January 10, 1910, the sheriff filed an opposition, alleging inter alia, that, in addition to the amount which he had received from the liquidators and expended for the preservation of the plantation and its crop while under seizure, he himself had expended $1,054.10 in the same behalf; that the crop which was on the plantation at the time of the sale had been separately appraised at $15,000, and that that sum had been

set apart from the proceeds of the sale to meet his demand and that of the liquidators. In April, 1910, about 18 months after the liquidators had filed their intervention, L. P. Patout Company, Limited, appeared in the case by way of a third opposition, and also contested the claim of the liquidators to the fund set apart at their instance and in the hands of the sheriff. The opponent alleged that while the plantation in question was under seizure, J. Paul Suberbielle, its president, entered into an agreement with the seizing creditors—

"the then holders of said note [meaning the note of $50,000, for the payment of which the seizure had been made], by which he would purchase said note for a company, to be organized by him in the event it became the purchaser of the * * * plantation."

It then alleged the adjudication to King and the transfer by him to the Patout Company, and further alleged that it—

"thereafter acquired said note, * * * and, the same being secured by special mortgage on the * * * plantation, is entitled to the proceeds resulting from the sale thereof, in preference over all other creditors, and especially in preference over the pretended claim of the liquidators of the State National Bank * * * as costs, under the writ that it afterwards abandoned; * * * that when the said * * * plantation was sold, it was acquired by the agent of your petitioner, Preston King, for * * * $142,000; that the mortgages and privileges ranking that of the seizing creditor, Emile Gajan, aggregated upwards of $123,000, leaving your petitioner, by reason of its purchase of said note, an ordinary creditor of Patout & Burguieres for upwards of $38,000; that, the entire plantation and crop being covered by the mortgage of your petitioner, it is entitled to the proceeds now in the hands of the sheriff, without which it will have received no credit on said note."

According to the return of the sheriff, certain of the interveners and third opponents, who were before the court litigating over the proceeds of the sale, as also the seizing creditors, instructed him to allow the purchaser to retain such proceeds, in so far as their interests were concerned; thus the return reads:

135 La.—6

"And the interveners and third opponents herein who had obtained orders from the court directing the sheriff to retain in his possession sufficient funds to cover the amounts of their respective claims, subject to the further order of court, namely, Payne & Joubert, Louis Levy, Mrs. M. O. Patout, tutrix, and the Albert Hansen Lumber Company, having filed with me, sheriff of the parish of St. Mary, written authorization to allow the purchaser to retain in his hands the amount of the purchase price, in so far as their interventions and third oppositions were concerned; and the Louisiana Sugar Company, which advanced the funds to me, sheriff, of the parish of St. Mary, with which to preserve and operate said property while under seizure, having filed with me, said sheriff, written instructions to allow said purchaser to retain in his hands the sum so advanced, * * * and attorney for the seizing creditors (Emile Gajan et al.), Messrs. Burke & Burke and Foster, Milling & Godchaux, having instructed me to allow said purchaser to retain in his hands the amount of the purchase price, in so far as the rights of the seizing creditor were concerned, with the exception of the payment of costs of this proceeding; and the purchaser having complied with his bid, in all respects, by depositing with me, said sheriff, a sum sufficient to cover the amount of the intervention and third opposition of the liquidators of the State National Bank of New Orleans, La., filed herein in accordance with the order of this court, I hereby make this my return:

Paid to Wilbur H. Kramer, clerk's
      costs .....................$   36  20
" " N. W. Latham (St. Mary Banner) .....................   87  50
" " W. T. Paterman, sheriffs'
      costs ..................... 1,462  60

"The above amounts were all paid by [to] me [by] the purchaser, Preston King, and, by me, paid to the above named parties. Amount retained in my hands, subject to the further order of this court, to cover amount claimed in the intervention and third opposition of the liquidators of the State National Bank of New Orleans, La. ―――― dollars.

"[Signed] Louis S. Rigler, Dy. Sheriff."

It will be seen from the foregoing that, with the exception of the amounts thus specified, and a further amount required to reimburse the advances made by the liquidators, the adjudicatee of the property paid out nothing. It will also be seen that all of the parties who appeared to have any claims whatever against the proceeds of the sale appeared before the court and took such action as they considered advisable for the assertion or protection of those claims.

Upon the trial of the intervention and oppositions, which resolved itself into a contest between the liquidators, upon the one hand, and the other litigants, upon the other, the liquidators offered to prove, item by item, the amounts advanced by them, and that they were used for the preservation of the property and the making of the crops, but they were met by the objection, and admission:

"We object to this line of examination because there is no question at issue here involving the correctness of the expenditures made while the property was under seizure."

The liquidators also offered to prove that Louis Levy was an interposed person, representing Mrs. Patout, one of the seized debtors, but the evidence was excluded.

The offering of evidence was completed, and the case was continued for argument upon July 11, 1910, and the minutes of the court show nothing more until July 29, 1911, upon which day there appears an agreement to the effect that judgment on the intervention of the liquidators should be rendered and signed and all objections arising from the fact that the court was not sitting in its regular term should be waived; and the judgment was accordingly rendered and signed upon that day, reading in part as follows:

"It is further ordered, adjudged, and decreed that there be judgment in favor of the liquidators of the State National Bank, intervener and third opponent, and against Patout & Burguieres and the component members of said partnership, Marie O. Patout and Leufroy J. Burguieres, and against the plaintiffs, Emile Gajan, Charles E. Poirson, and Jules Dryfous, and against the intervener and third opponent, L. P. Patout Company, Limited, and against the other interveners and third opponents in the above numbered and entitled cause, recognizing the lien and privilege set up by the liquidators of the State National Bank, interveners and third opponents herein, upon the money retained in the hands of the sheriff of the parish of St. Mary, out of the proceeds of the sale made in the above numbered and entitled cause, under order of this court, of date October 13, 1908 (annexed to the petition of intervention and third opposition of the liquidators of the State National Bank, in the record of this suit), and the sheriff of the parish be, and he is hereby, ordered, out of said funds held in his hands under the order of the court aforesaid, to pay the claim of the liquidators of the State National Bank in full, with interest and costs as hereinbefore set out. It is further ordered, adjudged, and decreed that the intervention and third opposition of the L. P. Patout Company, Limited, be rejected and dismissed at their cost."

None of the parties to the judgment so rendered appealed save the L. P. Patout Company, Limited, and this court rendered judgment on that appeal in October, 1913 (rehearing having been refused on December 15, 1913), holding that, if the appellant had ever acquired the note for $50,000, for the payment of which the Vacherie plantation had been sold (upon which question it was found unnecessary to express an opinion), the acquisition had not taken place until after the sale, and until after the proceeds of the sale had inured to the mortgage and seizing creditors, and hence that the Patout Company had no interest in said proceeds and no appealable interest in the case; and the judgment of the district court, rejecting its demands, was accordingly affirmed. Thereafter the liquidators demanded of the sheriff that he pay over to them the funds which had been retained by him to cover their claim, and they were met with an inquiry as to whether they were entitled to recover interest, and were then informed by the sheriff that a writ of injunction had been served upon him, restraining him from making the payment as required by said judgment, which injunction, as it appears, had been issued at the instance of L. P. Patout Company, Limited. The liquidators thereupon filed a rule in this court, upon which an order was made directing the L. P. Patout Company, Limited, and its president to show cause why they should not be required to desist from obstructing the execution of the judgment of this court, and why they should not be punished for contempt, to which they make a return to the effect that

in a suit instituted in the district court, in March, 1911, by Mrs. M. O. Patout, as tutrix of her minor children, the L. P. Patout Company, Limited, was evicted, by a judgment rendered in December of that year, of a large interest in the Vacherie plantation; that by reason of a similar suit against its vendee, the Mutual Sugar Company, the eviction would become complete; and that it had therefore instituted a suit to recover the price paid by it for said property, including the amount in the hands of the sheriff, and had caused the writ of injunction to issue in order to preserve the status quo.

We shall first endeavor to state the contents of the petition in the suit thus referred to, upon which the injunction issued, and which is made part of the return, and shall thereafter, advert more particularly to the matters set up in the return itself. The petition alleges the acquisition of Vacherie plantation by L. P. Patout Company, Limited; that various parties (whose names are mentioned) intervened, asserting mortgages and privileges on said property, for various amounts (which amounts are also mentioned); that, among them were: Mrs. M. O. Patout, asserting claims as tutrix of her minor children, amounting to over $44,-000; Louis Levy, who was a person interposed on behalf of said Mrs. M. O. Patout, and who claimed some $15,000 upon notes owned by her; and the liquidators of the State National Bank, claiming over $12,000, for costs and charges advanced to the sheriff. It further alleges that the property was adjudicated to Preston King, as the agent of petitioner, for $142,000, and that the price stipulated in the deed from King to petitioner was the same; that "the consideration was actually paid by plaintiff corporation to the parties entitled thereto"; that the sum retained by the sheriff, at the instance of the liquidators, is part of said price, but that plaintiff has always contested the right of the liquidators to recover the same; that in March, 1911, Mrs. M. O. Patout brought suit against petitioner on behalf of her minor children to recover certain undivided interests in certain of the tracts of land constituting Vacherie plantation, and brought a similar suit against petitioners' vendee, the Mutual Sugar Company, to recover $63/128$ interest in the refinery, and another suit against said company and petitioner to recover a similar interest in certain promissory notes, given by Leufroy J. Burguieres for a one-fourth interest in the whole of said property; that in the suit brought against petitioner there was judgment in favor of said tutrix, on December 5, 1912, and that, no appeal having been taken therefrom, the judgment is now final, and petitioner has been evicted from so much of the property in question as was therein claimed for the minors; that the case against the Mutual Sugar Company is much the same; that by reason of said suits, of the judgment against petitioner, and of the practical certainty that similar judgments will be rendered in the others "there has been a total failure of the consideration of the price" paid for said Vacherie plantation, and that petitioner is entitled to restitution of the entire price; that the seized debtors, Mrs. Patout and L. J. Burguieres, are insolvent, and that petitioner is entitled to recover, to the extent of the benefits received, from the seizing creditors and others who participated in said price; that the fund held by the sheriff is part of said price, and that petitioner is entitled to judgment therefor; that, unless enjoined, the sheriff will pay the same over to the liquidators, under the judgment upon its intervention; that said judgment—

"was rendered on pleadings filed anterior to the assertion of any rights in or upon said property on behalf of said heirs of L. P. Patout, and anterior to any knowledge in petitioning corporation of any such rights, and has no relation to, or effect upon, the questions at issue herein, etc.

"That the said liquidators have, in effect, com-

pleted the liquidation of said bank, save as to the one matter, have disposed of its assets, have distributed nearly all of its funds among the creditors and stockholders thereof, and will, as soon as they receive from said sheriff said funds retained by him, likewise distribute said amount and all other amounts received for account of said bank among the stockholders, and will, at once, proceed to close up the affairs thereof.

"That the said funds retained being the money of the plaintiff corporation, and it herein now claiming the same, * * * it is entitled to have the payment of the same to the said liquidators * * * enjoined. * * *"

The prayer is that the sheriff, Mrs. M. O. Patout, individually and as tutrix, Leufroy J. Burguieres, Emile Gajan, Charles A. Poirson, Jules Dryfous, Mrs. Widow Emma Smith, Lazard King, Earl Hine, Adolph B. Romero, Harry Scharff, Walter E. Payne, Payne & Joubert, Fred. Joubert, Louis Kohlman, Charles Morgan, and Warren Kearney, liquidators, be cited, and that there be judgment against them (as specified), and particularly requiring the sheriff to surrender the sum of $12,406.36, now held by him under the order obtained by the liquidators. The petition prays for a writ of injunction, directed to the sheriff, which was issued in the following terms, to wit:

"Now, therefore, * * * we do hereby * * * strictly enjoin and command that you * * * do absolutely desist and abstain from paying to the said liquidators, or to any other person, the said funds, or any part of same, retained * * * from the proceeds of a sale on a writ issued in the suit of Emile Gajan et al. v. Patout & Burguieres, during the pendency of this suit, and from in any manner disposing of said funds, or any part of same, during the pendency of this suit, until further orders of this court, under penalty of the law," etc.

Referring to the allegation that the liquidators have completed the liquidation save as to money here in controversy, the liquidators have filed an affidavit reading in part as follows:

"That the liquidators are still in possession, and have control of, on behalf of the said State National Bank, two bank buildings in this city, one known as 619 Common street, assessed in 1913 for $60,000, and one, No. 401 Royal street, assessed in 1913 for $20,000; that in addition to this they have certain interests in property situated out of the city; that, in addition to the foregoing they have in their possession notes and other obligations, the face value whereof is between $300,000 and $340,000; that in the regular course of events they do not believe any liquidation and winding up of the affairs of the bank can take place inside of a year, and the said liquidation may be extended for a considerably longer period."

Reverting now to the return proper, the respondents say:

"(1) Your respondents deny that either said company or said J. Paul Suberbielle is in contempt of the authority of this court, or has done, or caused or permitted any thing to be done, interfering with the judgment and decree of this honorable court, rendered in the above entitled and numbered cause or has done anything in contempt of this court's authority.

* * * * * *

"(4) Your respondents further and specially deny that the suit filed by the L. P. Patout Company, Limited, being No. 13,676 of the docket of the district court, * * * had for its purpose the prevention of the execution of the judgment rendered by the * * * district court * * * in the suit of Emile Gajan et al. v. Patout & Burguieres, Intervention of the Liquidators of the State National Bank, * * * or that the same was an attempt to thwart * * * the judgment, rendered by this honorable court, affirming the judgment of the district court in said cause, * * * but, on the contrary, aver that the present suit of the L. P. Patout Company, Limited, v. Patout & Burguieres is a separate and distinct action, founded upon an entirely different cause of action, entirely independent of the suit of Emile Gajan et al. v. Patout & Burguieres, not subject to the plea of res judicata, and founded upon a cause of action the right to which, or the merits of which, are in no manner questioned or denied by plaintiff in rule. All of which will fully appear by copy of said petition which is attached hereto," etc.

They aver that the allegation in said petition, to the effect that the liquidators have about completed their work, and, as soon as they recover the amount claimed from the sheriff, will distribute the same, was made in good faith, upon information which they believed to be reliable.

"(8) * * * That said petition * * * sets forth absolutely a good and valid cause of action, entitling it to claim a restitution of the very moneys paid by it to the sheriff. * * * "That * * * in due course it would be impossible to get a final judgment upon their petition under two years, before the expiration of which delay the affairs of the State National Bank will have been liquidated and the liquida-

tors discharged; that, under the law, a purchaser at a judicial sale who has been evicted or threatened with eviction, is entitled to obtain restitution from the defendant in execution, (or) plaintiff in execution, to the extent that he has been benefited by the sale, and likewise against any other creditor or other persons who may have received or ever been benefited or who claimed the right to receive or be benefited by the proceeds of said sale; * * * that, having a vested right to sue for restitution of the purchase price of the property from which the L. P. Patout Company, Limited, was lawfully evicted, your respondent, the L. P. Patout Company, Limited, cannot be deprived of this right because your respondent * * * unsuccessfully urged a right, by way of intervention in the proceeding by which the property was sold, * * * especially since the facts and circumstances justifying the present suit have all arisen since the filing of the intervention; * * * that said facts and circumstances * * * arose * * * subsequent to the filing of pleadings of the various parties, including your respondent, * * * and subsequent to the trial and hearing of said issues, and subsequent to the decision thereof by the judge of the * * * district court, * * * and subsequent to the taking of the appeal by your respondent company to this honorable court; that, during all the time of said filing of pleadings, hearing of said cause, decision thereon, taking and perfecting the appeal, your respondent and all of the parties in interest believed the said sales to Preston King, and from Preston King to your respondent * * * to have been valid; * * * that, after the perfecting the appeal from the judgment * * * upon the intervention of said liquidators, * * * the judgment of eviction was rendered * * * too late for your respondent to change the issues * * * in said intervention, or to abandon the appeal without acquiescing in the judgment; that if they are entitled to sue for the restitution of the purchase price, * * * then under article 302 of the Code of Practice, * * * the writ of injunction follows as a mere incident and a legal right to protect the status quo and preserve the property during the suit."

The counsel who now represents the respondents, and who has verified the foregoing return, is not the counsel who represented L. P. Patout Company, Limited, upon the appeal in the suit of Gajan et al. v. Patout & Burguires, but one of the counsel who then represented that company and other counsel, who then represented Gajan et al., and still others who appeared as amici curiæ and filed briefs on behalf of the Patout Company, have filed an affidavit to the effect that they advised with the present counsel with reference to the proceeding now under consideration, and were agreed that it was a legal and competent one.

We find another affidavit, attached to the return, made by the counsel who was employed to defend the suits brought by Mrs. Patout, as tutrix, against the L. P. Patout Company, Limited, and the Mutual Sugar Company, which states that the affiant looked into the matter carefully, and concluded, and so advised his clients, that the minors had a legal title to the property claimed by them, and would not only recover their inherited interest, but that their mortgage would reattach upon the interest of their tutrix; that the district court gave judgment against the Patout Company practically in accordance with that view, and that, in deponent's opinion, a similar judgment would have been rendered in the case against the Sugar Company had that case gone to trial. Finally, we find, as part of the return, the reasons assigned by the judge a quo for the judgment rendered by him in the suit brought by Mrs. Patout, tutrix, against the L. P. Patout Company, Limited, from which it appears that certain illegalities were found in the adjudication, to the surviving widow, of the property which had belonged to the community that existed between L. P. Patout, deceased, and Mrs. Marie O. Patout, his wife, by reason whereof it was held that the title, inherited by the minors, to so much of that property as had developed upon the succession of their father, had not been divested. .

### Opinion.

It will be seen from the foregoing statement that in the case of Gajan et al. v. Patout & Burguieres, 133 La. 1060, 63 South. 585 (being the case under the title and number of which this proceeding has been taken), the liquidators of the State National Bank, the L. P. Patout Company, Limited,

Mrs. Marie O. Patout, tutrix, and several others appeared in court for the assertion of their respective rights in and to the property which was therein seized and sold, and in and to the proceeds of the same; that, contradictorily with all these parties, a judgment was rendered by the district court decreeing the liquidators of the bank to be entitled to be paid the amount claimed by them from the particular fund which, at their instance, had been ordered to be reserved from those proceeds, and which has since been held by the sheriff, and that the judgment, so rendered by the district court was affirmed by this court upon the appeal of the L. P. Patout Company, Limited, no other party to the proceeding having appeared to assert an interest or to challenge the correctness of the judgment appealed from.

Whether, under the circumstances thus stated, or, whether, if there had been no such litigation, and the amount here in question had been paid to the liquidators, without controversy, as in reimbursement of money advanced for costs and for the preservation of the property seized, the petition filed by Mrs. M. O. Patout, tutrix, discloses, or would disclose, a cause of action for the recovery of such amount is a question concerning which we express no opinion. We will assume that the petition does disclose a cause of action, and that a purchaser at a judicial sale, who is subsequently evicted from part of the property purchased by him, may recover, from parties situated as were the liquidators in this case, money reimbursed from the proceeds of the sale to those by whom it was advanced for sheriff's costs and for the maintenance and preservation of the property while under seizure, and that he may do so without first attempting to collect such money either from the seized debtor or the seizing creditor; and, so assuming, we inquire whether, after the parties in interest have litigated, to the Supreme Court of this state, their respective claims to a particular sum of money, held, under order of the court a qua, by the sheriff of that court, and a final judgment has been rendered by the Supreme Court in affirmance of the judgment appealed from, awarding the money to one of the parties and ordering the sheriff to pay it to him, there is any power lodged in the court of first instance to enjoin or otherwise obstruct the execution of such judgment.

[1] The Constitution of this state confers upon this court the power, by one means or another, to review the judgments of the Courts of Appeal and District Courts, and, lest the specific grants, so made should fail to comprehend the entire jurisdiction which it was thought advisable to confer, article 94 declares that—

"the Supreme Court shall have control and general supervision over all inferior courts," etc.

It is hardly necessary to say that no jurisdiction to review the judgments of this court is conferred upon any inferior court, or to say that no jurisdiction is conferred upon any inferior court to hinder or obstruct the execution of such judgments, without reviewing them; for a court of last resort the execution of whose judgments should be dependent upon the will or discretion of the courts whose judgments it is authorized to review would be a hissing reproach to common intelligence.

Three-quarters of a century ago it was said by this court, through Martin, J.:

"The defendants and appellants complain of the judgment of the district court which sustained an action of nullity against and actually set aside a judgment of this court. They rely on the Code of Practice (article 608), which requires the action of nullity to be brought in the court which rendered it, or the court of appeal before which the appeal from such a judgment was taken. Hence it is urged that whenever a judgment has been appealed, * * * it is no longer competent to give a remedy on an action of nullity. Code of Practice, art. 611.

"But the appellee's counsel urges that, as this court possesses no original jurisdiction, and is incapable of receiving any from the Legislature, its judgments may be attacked on the

score of nullity, in the court which rendered the judgment appealed from, whether affirmed or reversed by this court. This appears to us a non sequitur. The Legislature has not given jurisdiction to the district court, and it cannot assume it." Melancton's Heirs v. Broussard et al., 2 La. 8.

There has been no change in the law since the opinion thus quoted was handed down, whereby the jurisdiction thus referred to has been conferred on the district courts; and, if such change is required, it must be made, not by the judiciary, but, by that department of the government which the people have authorized to make and change the law, and which, in approaching the question, would no doubt consider whether it is to the interest of the republic that there should be an end of litigation, or that it should be interminable. The law, as it stands, and has stood for nearly a century, provides that the judgments of this court (referring to judgments in appealed cases) "shall be sent back for their execution to the inferior court." C. P. 915. And, if there is any one proposition that is better settled than another in the jurisprudence of this court, it is that the functions of the inferior court, in relation to a judgment so remitted to it for execution, are merely ministerial, and that it cannot render any new judgment which would authorize an appeal or render an appeal necessary. Cox's Executors v. Thomas, 11 La. 369; Lovelace v. Taylor, 6 Rob. 93; State ex rel. Villavaso v. Judge, 20 La. Ann. 521; State ex rel. Bovee v. Herron, 24 La. Ann. 619; Heirs of Stafford v. Renshaw, 33 La. Ann. 443; State ex rel. Bank v. Pilsbury, Mayor, 35 La. Ann. 408; Succession of Martin v. Succession of Hoggatt, 37 La. Ann. 340; State ex rel. Gee, 38 La. Ann. 274.

In State ex rel. Bovee v. Herron, supra, it was held (quoting syllabus):

"Article 620 of the Code of Practice makes it obligatory upon the clerks of the district courts in cases where mandates and decrees from the Supreme Court have been presented for execution to at once, and without any order or de-

cree from the judge a quo, issue the necessary process to execute the judgment of the Supreme Court. A refusal or failure on the part of the clerk to comply with this article of the Code of Practice in any case where he has been required to do so will subject him to punishment for contempt by the Supreme Court, for disobedience to the mandates of the law.

"Under this article of the Code of Practice the judge of the district court has nothing to do with the execution of the orders and decrees of the Supreme Court. Therefore, if a judge of a district court interferes with or obstructs or hinders in any way as judge the execution of a judgment of the Supreme Court, he will be held guilty of a contempt of the authority of that court, and the plea of ignorance of the provisions of this article will not shield him from the penalties denounced against those who obstruct the execution of the mandates of this tribunal."

In the instant case, the respondents say in their return:

"Your respondents deny that either said company or said J. Paul Suberbielle * * * has done or caused or permitted anything to be done interfering with the judgment and decree of this honorable court. * * *"

The petition for injunction filed by said company, however, alleges:

"That * * * the said liquidators claim, and are demanding, from said sheriff the said money, and that, under color of a judgment, rendered by this honorable court and affirmed by the Supreme Court of Louisiana, * * * the said sheriff recognizes them as entitled to said amount thus retained by him, and * * * will, at once, unless restrained by writ of injunction from so doing, pay the said entire amount to the said liquidators," etc.

The judgment thus referred to runs in favor of the liquidators and against various parties to the proceeding, who are named, including L. P. Patout Company, Limited, and—

"against the other interveners and third opponents, * * * recognizing the lien and privilege set up by the liquidators, * * * upon the money retained in the hands of the sheriff * * * out of proceeds of sale made in the above entitled and numbered cause, under order of court, of date October 13, 1908."

And it decrees that—

"the sheriff * * * be, and he is hereby, ordered, out of said funds, held in his hands under the order of the court aforesaid, to pay the claim of the liquidators * * * in full, with interest and costs, as hereinbefore set out. It is further ordered * * * that the inter-

vention and third opposition of the ⟨L. P. Pa-
tout Company, Limited, be rejected and dis-
missed, at its cost."

The writ of injunction as prayed for by
L. P. Patout Company, Limited, and its presi-
dent, and as issued, reads in part:

"We * * * do strictly enjoin and com-
mand that you * * * do absolutely desist
and abstain from paying to the said liquidators
* * * the said funds or any part of same re-
tained * * * from the proceeds of sale on a
writ issued in the suit of Emile Gajan et al. v.
Patout & Burguieres, during the pendency of
this suit, * * * until the further order of
this court, under penalty of the law. * * *"

From what point of view the plaintiff in in-
junction (after making the allegations, and
obtaining the writ, as above set forth, which
prevented the sheriff from obeying the ex-
plicit command directed to him by the judg-
ment of this court) felt authorized to deny,
in its return to the rule herein issued, that it
had "done or caused or permitted anything
to be done interfering with the judgment and
decree of this honorable court," is not alto-
gether clear.

After making the return, as stated, how-
ever, the respondent company explains that
its reason for interfering was—

"that said judgment, as affirmed, was rendered
on pleadings filed anterior to the assertion of
any rights in or upon said property on behalf
of said heirs of L. P. Patout, and anterior to
any knowledge in petitioning corporation of
any such rights."

That is to say, the intervention of the liq-
uidators and the opposition of the Patout
Company were filed in the Gajan suit before
the tutrix asserted the rights of her minor
children to their inherited interest in the
property, the proceeds of which were the
subject of the litigation in that suit, and be-
fore the Patout Company had acquired any
knowledge of such rights. It may be stated,
in that connection, that the Patout Company
appears to be composed of Mrs. M. O. Patout,
her two brothers, the Messrs. Suberbielle,
and Emile Gajan, so that, humanly speaking,
the defendants in the suit against that com-
pany, in which Mrs. Patout, as tutrix, asserts
the rights of her minor children, are Mrs.
Patout herself, the mother of the children,
her brothers, the uncles of the children, and
Emile Gajan, who may or may not be related
to them. Apart from that, however, the suit
of Mrs. Patout, tutrix, was instituted in
March, 1911; the trial of the Gajan suit was
closed in July, 1910, and had been continued,
to be set down for argument, and it had not
been so set down in March, 1911, and does
not appear to have been so set down until
July 29, 1911, four months after the institu-
tion of the suit on behalf of the minors. The
counsel who was employed to represent the
Patout Company in the suit last mentioned
has, as we have stated, filed an affidavit to
the effect that, upon looking into the matter,
he concluded that the minors had a clear
case, and so advised his client, so that, after
being fully informed and advised as to the
claim of the minors, the Patout Company
had, perhaps, four months in which to call
the matter to the attention of the judge of
the district court, and request that the Ga-
jan Case be opened, and it be given a hearing
with reference to that claim. The two suits
were in the same court, and, as the develop-
ments in the one might very well have aided
in the determination of the other, we see no
reason to doubt that such a request would
readily have been granted. Instead, how-
ever, of availing itself of that opportunity,
the respondent company seems to have
thought it possible that, with the informa-
tion mentioned in its possession, it might
await the judgment of this court in the Ga-
jan matter, and, in the event of its being ad-
verse to its pretensions, enjoin its execution.

[2] It is undoubtedly true that where, un-
der a judgment and execution against one
person, the sheriff seizes the property of an-
other, the owner of the property may enjoin
the seizure, but that is because, there being
no judgment against the owner, and the sher-

iff having no authority, under the writ, to seize his property, he is not executing the judgment when he does so, but is committing a trespass.

[3-5] Again, where two persons litigate titles set up by them, respectively, to particular property, and it is decreed to belong to one of them, though in fact it belongs to a third person not a party to the suit, such third person may thereafter, either sue for the property himself, or may transfer his right to the party cast in the litigation or to another, who may then exercise it, and renew the litigation for the vindication of the title thus acquired. In other words, a litigation is not conclusive as against those who are not parties to it, nor as to rights not possessed by the litigants at the time, save as to persons who are the privies of each other. But a party litigant, whether plaintiff or defendant, is bound to set up whatever title or defense may be at his command or within his knowledge, and is not at liberty to reserve what he pleases and make it the basis of a new litigation. Article 302, C. P., has no application to the case of a third person claiming property, the title to which he has already claimed by a suit which he has lost, unless it be that his new claim is based upon a new title. And the case of Roussel v. Railways Realty Co., 133 La. 153, 62 South. 608, has no application to a case where the plaintiff, enjoining the execution of a judgment, was himself a party to the judgment enjoined, for it was there held (the writer of this opinion dissenting) that the plaintiff in injunction was not a party to the judgment enjoined.

The counsel who, in one capacity or another, have appeared on behalf of the respondents are well known to the court as members of the bar of irreproachable character and standing, and we accept their assurance that they have acted in good faith, in the belief that the proceeding advised by them was authorized by law, and with no in-tention of treating with contempt the judgment of this court. We are, however, of opinion that the judgment in question should be executed forthwith.

It is therefore adjudged and decreed that the rule herein issued be made absolute, in so far as that the writ of injunction, issued in the matter of L. P. Patout Co., Ltd., v. Patout & Burguieres et al., No. 13,676 of the docket of the Twenty-Third judicial district court for the parish of St. Mary, be set aside, and that L. P. Patout Company, Limited, plaintiff in said writ, be ordered to desist from interfering with the execution of the judgment rendered by this court in the suit of Emile Gajan et al. v. Patout & Burguieres, 133 La. 1060, 63 South. 585, No. 19,099, of the docket of this court. It is further decreed that said respondent pay the costs of this proceeding.

See dissenting opinion of PROVOSTY, J., 65 South. 25.