386 So.2d 995 (1980)
Alton TASSIN and Ray Normand, Plaintiffs and Appellants,
v.
Malcolm SAYES, Defendant and Appellee.
No. 7671.
Court of Appeal of Louisiana, Third Circuit.
May 21, 1980.
*996 Donald R. Wilson, Marksville, for plaintiffs and appellants.
Ben C. Bennett, Jr., Marksville, for defendant and appellee.
Before CULPEPPER, CUTRER and DOUCET, JJ.
CULPEPPER, Judge.
This is an appeal from a judgment sustaining an Exception of Res Judicata based on a prior judgment of this Court. In Tassin v. Rhynes, 366 So.2d 580 (3rd Cir. 1978), plaintiffs, Alton Tassin and Roy J. Normand, filed an action captioned "Suit For Declaratory Judgment Establishing Title And Boundaries." They alleged they were owners of certain property, described as accretion, in Section 29, Township 3 North, Range 4 East, Avoyelles Parish, Louisiana. Defendants were C. A. Rhynes, Malcolm Sayes and Foster J. Johnson. Defendant Sayes denied plaintiff's ownership and reconvened for recognition of his possession of the disputed area. The district court found the land in dispute is accretion, under LSA-C.C. Article 509, and divided it proportionately among the owners of the frontage on the edge of the river as follows:
Plaintiff Alton Tassin15.76 acres
Plaintiff Roy J. Normand33.02 acres
Defendant Foster J. Johnson1.41 acres
Defendant Malcolm Sayes26.22 acres
On appeal, we affirmed the title of Foster J. Johnson and reversed as to the other parties. We found defendant Sayes was in possession of all but 7 acres of the approximately 75 acres in dispute, whether it be accretion under Article 509 or cut off land under Article 518. We held the 7 acres is possessed by plaintiff Tassin. We further found that plaintiff Tassin failed in his *997 burden of proving title good against the world as to any land on the edge of the river or as to any of the land in dispute possessed by defendant Sayes. But Tassin had proved better title than Sayes to the 7 acres of the land in dispute possessed by Tassin. Accordingly, we recognized plaintiff Tassin's ownership of 7 acres of the land in dispute and confirmed defendant Sayes' possession of the remainder. We rejected all claims by plaintiff Normand on the basis that he failed to prove perfect title to any part of the land on the edge of the river or better title than Sayes to the property possessed by Sayes. Writs were denied by the Supreme Court, and the judgment became final on December 1, 1978.
On April 16, 1979, plaintiffs Tassin and Normand filed this suit against defendant Malcolm Sayes. Plaintiffs styled their pleadings a "Petition For Recognition As Owner Of Immovable Property And For Partition In Kind Pursuant To The Provisions Of Article 516, Or Alternative Demand For Partition As Recognition Of Owner Of Immovable Property." They alleged they are owners in indivision of a tract of land described in their petition as follows:
A certain tract or parcel of land, consisting of 75.0 acres, more or less, situated and lying in Section 29, T3N, R4E, Second Ward of Avoyelles Parish, Louisiana, said property lying South of Red River, and being bounded now or formerly on the North by Red River, on the South by Roy J. Normand, and others, on the West by Alton Tassin, and on the East by Malcolm Sayes, all as more fully shown on Plat of Survey of Louis J. Daigre and Associates dated May 18, 1977, which plat is attached to and made a part hereof by reference.
The described land includes that of which we recognized Sayes' possession in the prior suit.
Plaintiffs further alleged that they desire to partition the above property, but that defendant Sayes had refused a conventional partition. In the alternative, plaintiff Tassin alleged he was owner of Lot 23 and defendant Sayes was owner of Lots 18, 19, 20, 21 and 31 of the same R. J. Johnson partition and that R. J. Johnson was their common ancestor in title.
Defendant Sayes filed Exceptions of Res Judicata and No Cause and No Right of Action based on our prior judgment. The trial court sustained the exception of res judicata.
Defendant-exceptor Sayes contends plaintiffs are precluded from relitigating their demands in this case by principles of res judicata under LSA-R.S. C.C. Article 2286. Our Supreme Court recently stated the general rules of res judicata in Welch v. Crown Zellerbach Corporation, 359 So.2d 154 (La. 1978):
"[1] As a result of our civilian heritage, res judicata under Louisiana law is perceived to be much narrower in scope than its counterpart in common law jurisdictions. See 51 Tul.L.Rev. 611 (1977); Maloney, Preclusion Devices in Louisiana; Collateral Estoppel, 35 La.L.Rev. 158 (1974). Louisiana legislative authority for res judicata establishes a presumption of correctness and precludes relitigation of the object of the judgment only when there is (1) an identity of the parties, (2) an identity of `cause' and (3) an identity of the thing demanded. C.C. 2285-2287, 3556(31); Mitchell v. Bertolla, 340 So.2d 287 (La.1976); Sliman v. McBee, 311 So.2d 248 (La.1975); Scurlock Oil Co. v. Getty Oil Co., 294 So.2d 810 (La.1974). The absence of any of these identities is fatal to a plea of res judicata."
In the present case, there is identity of parties. Plaintiffs and defendant were parties in both suits. Also, there is an identity of the thing demanded by plaintiffs. In both suits, plaintiffs sought to be recognized as owners of the land in dispute. The question is whether there is an identity of "cause." See Mitchell v. Bertolla, 340 So.2d 287 (La.1976) for a full discussion of "cause." The court states "cause" is the "juridical facts on which the demand is based."
In his brief, defendant points out our jurisprudence has recognized certain exceptions *998 to the general rules of res judicata quoted above from Welch v. Crown Zellerbach. In Hope v. Madison, 194 La. 337, 193 So. 666 (La.1940), plaintiff sued her attorney to annul a sale on the basis of LSA-C.C. Article 2447, which prohibits attorneys from purchasing litigious rights. The defendant filed an exception of res judicata, based on a prior suit by Mrs. Hope against Madison to annul the sale on the grounds of lack of consideration and fraud. Mrs. Hope's demands in the prior suit were rejected. In the second suit, Madison urged res judicata on the grounds that identical issues were raised and decided in the prior case. However, the court noted that although nullity under Article 2447 was argued in plaintiff's supplemental brief on appeal in the prior case, the issue was neither pleaded nor decided. In overruling the exception of res judicata, the court held the common law rule that res judicata precludes not only everything pleaded in a prior case but also everything that could have been pleaded, does not generally apply in Louisiana. However, the court then stated that there are exceptions. One of these exceptions is set forth as follows:
"... that parties litigant in a petitory action, whether plaintiff or defendant, must set up whatever title or defense they may have at their command or a judgment on that issue will bar a second action based on a right or claim which existed at the time of the first suit, even though omitted therefrom. Gajan v. Patout & Burquieres, 135 La. 156, 65 So. 17; Succession of Whitner, 165 La. 769, 116 So. 180."
In the case of Gajan v. Patout & Burquieres, cited in Hope v. Madison, supra, the court made the following statement, which is particularly applicable to the case at bar:
"Again, where two persons litigate titles set up by them, respectively, to particular property, and it is decreed to belong to one of them, though in fact it belongs to a third person not a party to the suit, such third person may thereafter, either sue for the property himself, or may transfer his right to the party cast in the litigation or to another, who may then exercise it, and renew the litigation for the vindication of the title thus acquired. In other words, a litigation is not conclusive as against those who are not parties to it, nor as to rights not possessed by the litigants at the time, save as to persons who are the privies of each other. But a party litigant, whether plaintiff or defendant, is bound to set up whatever title or defense may be at his command or within his knowledge, and is not at liberty to reserve what he pleases and make it the basis of a new litigation. Article 302, C.P., has no application to the case of a third person claiming property, the title to which he has already claimed by a suit which he has lost, unless it be that his new claim is based upon a new title."
In the recent case of Mitchell v. Bertolla, 340 So.2d 287 (La.1976), the court noted the exceptions stated in Hope v. Madison:
"As with the well established exceptions recognized in Hope v. Madison, supra, there will be areas in Louisiana jurisprudence in which the application of French doctrine, as we perceive it, might result in a conclusion different from that reached by this court in balancing the competing interests. See Fulmer v. Fulmer, 301 So.2d 622 (La.1974)relitigation of fault in divorce action; McKnight v. State, 68 So.2d 652 (La.App.1st Cir. 1953); XIV La.L.Rev. 901master-servant liability. Such cases can not be interpreted as evidence of a return to common law preclusion devices, and can not be understood as withdrawing from the position of Hope v. Madison, supra. The res judicata of C.C. 2286 is not the res judicata of the common law."
Under the above jurisprudence, the present rule recognized by our Supreme Court is that petitory actions are exceptions to the general civil law rule that res judicata precludes relitigation of only causes actually pleaded and decided in the prior case. In petitory actions, res judicata precludes relitigation of not only causes which were pleaded and decided in the prior case, but *999 also causes which the party could have pleaded. The rationale suggested by Gajan v. Patout & Burguieres, supra, is protection of titles to immovables against unnecessary successive litigations. Gajan states a party litigant claiming ownership must plead "whatever title or defense may be at his command or within his knowledge, and is not at liberty to reserve what he pleases and make it the basis of a new litigation." Any new litigation must be based on a new title.
Although the jurisprudence speaks only of petitory actions, the rationale applies to any type of action seeking recognition of ownership of immovables. Thus, it is immaterial whether both suits are "petitory" actions, as defined in our Code of Civil Procedure, so long as the thing demanded in both is recognition of ownership.

PLAINTIFF TASSIN'S CONTENTIONS
As we understand Tassin's argument, he contends ownership of the land above described was not decided in the first case. On this premise, he contends that our recognition of defendant Sayes' possession in the first suit does not bar Tassin's second suit for recognition of ownership. Tassin alleges no new title.
We agree with Tassin that there was no adjudication on the issue of defendant Sayes' ownership. We do not agree, however, that the issue of Tassin's ownership was not adjudicated. We decided that plaintiff Tassin's ownership in the disputed property is limited to the 7 acres described in our decree. As to the land possessed by Sayes, Tassin seeks to relitigate the same title which he alleged, and the court rejected in the prior suit. He is clearly precluded by res judicata.

PLAINTIFF NORMAND'S CONTENTIONS
Plaintiff Normand's principal contention is that the plea of res judicata is inapplicable to him because he has acquired from the Mayeux heirs a new title, not adjudicated in the previous suit. Normand relies on the following from our prior judgment:
"Jurisprudence has established the rule that if, at the time of sale of a riparian estate, the alluvion or batture attached has attained a sufficient elevation to be susceptible of private ownership, the alluvion does not pass with the riparian land unless it is expressly so stated in the Act of Sale. State v. Richardson, 140 La. 329, 72 So. 984 (1916); Maginnis Land & Improvement Company v. Marcello, 168 La. 997, 123 So. 653 (1929). In the present case, it is clear that the `batture' had formed and was susceptible of private ownership by the Mayeuxs by the time they sold to Normand in 1966. Yet, the Mayeuxs sold to Normand only a specifically described 86.5 acres and did not sell any of the `batture' at issue here. Therefore, we conclude that plaintiff Normand is not entitled to any of the `batture' in dispute. It may be that the heirs of Charles J. Mayeux still have a claim to a portion of the `batture', but they are not parties to the present suit and that issue is not before us." (Emphasis supplied)
Normand argues the above underlined portion of our decision in the prior case reserved to the Mayeux heirs any claim which they had to the accretion, and that Normand acquired from the Mayeux heirs any right which they had to the accretion. Normand argues he therefore has a new title to the accretion.
Normand's alleged new title is based on two correction deeds which he obtained from the Mayeux heirs. The first is titled an "Act of Ratification, Acknowledgment and Quitclaim" from the Mayeux heirs to Normand recorded on July 15, 1976 in the Conveyance Records of Avoyelles Parish. This Act of Ratification states that in the original deed from the Mayeux heirs to Normand, executed in December of 1966 conveying 86.50 acres, more or less, the vendors failed to execute the sale before a notary and two witnesses. The purpose of the 1976 Act of Ratification was to correct this deficiency. The 1976 Act of Ratification does not seek to correct the description of the land conveyed in 1966. Clearly, the *1000 1976 instrument is not the basis of any new title.
The second instrument on which Normand relies is an "Act of Correction" from the Mayeux heirs to Normand signed by the respective vendors on different dates during September and October of 1978 and recorded on October 30, 1978 in the Conveyance Records of Avoyelles Parish. This Act of Correction was recorded after the judgment of the district court in the prior suit was rendered on June 17, 1977, and after our decision in the prior case became final by the denial of a rehearing on October 16, 1978, but before the Supreme Court denied writs on December 1, 1978. The 1978 Act of Correction described the original 1966 sale by the Mayeux heirs to Normand, and then states:
"That an error was committed in preparing the aforesaid description in that the act inadvertently omitted to include all accretion and or alluvion which has been or may hereafter be allocable to the above said property by accretion or otherwise by changes in the Red River, when as a matter of fact it was the intention of the parties that all riparian rights, accretions and or alluvion allocable to the subject property due to changes in the Red River be included in the description in the sale.
"That in view of the foregoing and for the same consideration originally recited, the parties have agreed to reform and correct the aforementioned description, so as to have the same read as follows, to wit:
(Then follows a description of the 86.5 acres on the bank of the river)
* * * * * *
"The vendors herein expressly convey to vendee all riparian rights, accretions and or alluvion which has been or may hereafter be allocable to the above described property due to the changes in the course of Red River."
The question before us is whether the 1978 Act of Correction constitutes a new title in Normand not precluded by res judicata. This is a difficult issue. It is res nova in Louisiana. Since in petitory actions the rule of res judicata applicable in Louisiana is similar to that at common law, we also researched decisions from other states, but found no cases dealing specifically with correction deeds urged as new titles. We will attempt to decide the issue in accordance with the rationales expressed by our Supreme Court in the above discussed decisions.
As stated above, petitory actions, or other actions in which the ownership of immovables is at issue, are an exception to the general civil law rule of res judicata that only "causes" pleaded and decided in the prior case are precluded in a subsequent case. Our jurisprudence has recognized that in actions involving the ownership of immovables our rule of res judicata is similar to that in the common law states, i. e., res judicata precludes relitigation of not only causes which were pleaded and decided in the prior case, but also causes which the party could have pleaded. Gajan v. Patout & Burguieres, supra, states that a party litigant claiming ownership must plead "whatever title or defense may be at his command or within his knowledge, and is not at liberty to reserve what he pleases and make it the basis of a new litigation."
Using the Gajan rationale, Normand should have pleaded in the prior suit whatever title was at his command or within his knowledge. He was not at liberty to reserve any title he had and make it the basis of a new suit.
There is no question that Normand knew or should have known his 1966 sale from the Mayeux heirs did not include any portion of the accretion which had occurred in 1940-44. This is fully discussed in our prior opinion.
We think it is also obvious that any time from 1966 up until the end of the litigation in the district court in the prior case in 1978, Normand had at his command the right to obtain, or at least to seek, from the Mayeux heirs a correction or reformation of the 1966 deed to include all of the vendors' rights to the accretion. The October 1978 *1001 Act of Correction is itself proof that Normand could have obtained such an instrument from the Mayeux heirs before or during the prior litigation. Thus, we conclude that whatever rights to the accretion were acquired by Normand in the 1978 Act of Correction were "at his command or within his knowledge" before and during the prior litigation, and he was not at liberty to reserve this right and make it the basis of a new litigation.
We note that the 1978 Act of Correction is stated to be for the same consideration as the 1966 sale and is merely to "reform and correct" the description in the 1966 deed. Thus, this is an attempt to reform or correct a title which Normand already had during the prior litigation. It is not the sale of a new title for a new consideration.
We conclude Normand has no new title under the Correction Deeds on which he relies.
Normand argues additionally what we understand to be the same contention as made by Tassin, i. e., that his ownership was not adjudicated in the prior suit. This argument has no merit. Normand's ownership was at issue in the prior suit, and it was adjudicated that he owned no part of the land in dispute.
In his brief, counsel for Sayes mentions that our judgment in the prior suit, granting his reconventional demand for recognition of Sayes' possession, does not order Tassin or Normand to file an adverse claim of ownership within 60 days, as provided by LSA-C.C.P. Article 3662. The reason we did not order Tassin or Normand to assert any adverse claim of ownership within 60 days or be precluded thereafter, is that Sayes did not pray for such relief, as required by the express language of Article 3662. Comment (b) under Article 3662 explains that the plaintiff in a possessory action may not wish to have the defendant ordered to make an adverse claim of ownership, and, for that reason, such relief must be specially prayed for.
For the reasons assigned, the judgment appealed is affirmed at plaintiffs' cost.
AFFIRMED.