PONDER, Judge.
Plaintiffs appealed the dismissal of their suit for declaratory judgment on defendant’s peremptory exception of res judicata.
The issue on appeal is whether the doctrine of res judicata bars litigation of the instant action.
We reverse and remand.
The facts are essentially undisputed. On August 29, 1929, Joseph deFuentes Harrison purchased approximately 22 thousand acres of Lafourche Parish marshland. In the Act of Sale, the vendors reserved the oil, gas and mineral rights attached to the land, which they transferred on July 22, 1930, to defendant’s ancestor in title, The Grandison Company. On June 6, 1935, The Grandison Company granted a mineral lease to Gulf Refining Company, which began drilling a well (Gulf No. 1) in March of 1939. This well was abandoned as a dry hole on June 16, 1939. Gulf Refining Company drilled a second well (Gulf No. 2) on August 23, 1939; however, this well-was also dry and was abandoned on December 17, 1939.
On February 5, 1940, Joseph deFuentes Harrison brought suit against The Grandi-son Company, alleging that the mineral rights reserved in 1929 had reverted to him by virtue of the accrual of ten years libera-tive prescription of non-use.[1] The suit was removed to Federal Court and converted to a petitory action. Thereafter, Joseph Harrison died and his widow and children were substituted as parties plaintiff. Prior to the institution of the suit, Joseph de-Fuentes Harrison had sold small portions of his property to others; none of the vendees joined Joseph Harrison as plaintiffs in the 1940 suit.
The federal district judge was presented with two separate issues: (1) whether the drilling of the two Gulf wells constituted timely and good faith use of the reserved mineral servitude(s) burdening the Harrison lands, and (2) if they did, what was the extent of the servitude(s) preserved thereby. The Harrisons’ main argument was that the areas immediately surrounding the two wells were rendered noncontiguous to the remainder of their lands by various navigable waterbodies. The Harrisons contended that the state ownership of the beds of these waterbodies destroyed the contiguity of their lands, thus creating several separate and distinct mineral servitudes on their lands, not all of which were removed from the accrual of prescription by the drilling of the two wells.
In his written opinion, the federal district judge made the following findings of fact: (1) that in the 1929 Act of Sale whereby Grant and Andrus transferred the lands in question to Joseph deFuentes Harrison and reserved all oil, gas and mineral rights thereto, this reservation, because of the lack of contiguity of the Harrison lands at that time, operated as the reservation of several separate mineral servitudes; (2) that only the continued existence and respective land acreage of two of those servi-tudes were at issue;[2] (3) that all parcels of land within Tract “A” were contiguous, and as a consequence, the drilling of Gulf No. 1 within that tract’s boundaries interrupted the running of the ten year prescriptive period for the entirety of Tract “A”; and (4) that all parcels of land within Tract “B” were likewise contiguous, and as a *319 consequence, the drilling of Gulf No. 2 within that tract’s boundaries interrupted the running of prescription for that entire tract. In making these findings of fact, the district judge determined that the Har-risons had failed to prove the navigability and consequent state ownership of certain waterbodies asserted.
In accordance with these reasons, the federal district court rendered partial judgment in favor of The Grandison Company, decreeing it to be the lawful owner of the oil, gas and mineral rights appertaining to Tracts “A” and “B.” The court rendered partial judgment in favor of the Harrisons, decreeing all of the oil, gas and mineral rights appertaining to the remainder of the Harrisons’ lands had reverted to them by virtue of non-use during the ten years prescriptive period following August 29, 1939. This judgment was not appealed and thus became final. Harrison v. Grandison Co., 51 F.Supp. 768 (E.D.La.1943).
Following the abandonment in 1939 of the wells drilled by Gulf Refining Company, there was no further drilling on the Harrison lands, until January 22, 1949, when a well designated as the H.L. Hunt No. 1 was drilled on lands within that area designated as Tract “A” in the 1943 federal court judgment. That area designated as Tract “B” has not been drilled upon since 1939.
Subsequent to the 1943 federal judgment, the tract of land previously sold to Nelson Constant was reacquired by the Harrisons. In addition, on August 26, 1966, The Grandison Company transferred its oil, gas and mineral rights to The Gran-dison Trust.
On February 11, 1982, Lydia Harrison Ryan, William H. Harrison, Jr., Shirley Harrison Hyde, Katherine L. Harrison, Richard Harrison, and Family Project-A Louisiana Partnership In Commendam (plaintiffs) brought suit against The Gran-dison Trust (defendant), seeking a declaratory judgment that almost all the oil, gas and mineral rights held by The Grandison Trust had reverted to them by virtue of the accruing in 1949 of ten years prescription for non-use. Plaintiffs exempted from the scope of their petition a limited area immediately surrounding the H.L. Hunt No. 1 well.
In this 1982 suit, only the reversionary rights of the plaintiffs in regard to Tract “A” are at issue, it being uncontested by The Grandison Trust that the servitude burdening Tract "B” had expired in 1949 for non-use. The thrust of plaintiffs’ claim as to Tract “A” was that the H.L. Hunt No. 1 well had interrupted the running of prescription[3] only as to a relatively small area of land immediately surrounding the well, bounded by two bayous which plaintiffs claimed became navigable subsequent to the 1943 federal judgment. The underlying basis of this argument was that the subsequently arising navigability of these two bayous resulted in the vesting of title of their beds in the state of Louisiana, which in turn caused the area enclosed between the bayous to become noncontiguous with the remainder of the lands within Tract “A,” which further caused the creation of a separate mineral servitude burdening this area distinct from the servitude burdening the rest of Tract “A.” Accordingly, plaintiffs argued, the drilling of the H.L. Hunt No. 1 well did not prevent the extinguishment of that separate servitude burdening all lands lying beyond these two bayous.
In the alternative, plaintiffs sought to prove their reversionary rights as to another portion of Tract “A,” on the ground that it was separated from and noncontiguous with the rest of the tract by virtue of a bayou that was navigable in 1812. In the further alternative, plaintiffs sought to prove their reversionary rights as to still another portion of Tract “A” on the grounds that it was separated from and noncontiguous with the rest of the tract by virtue of a bayou that became navigable *320 over ten years prior to the institution of suit in 1982 and the servitude burdening that area had not been used since the area became noncontiguous.
The Grandison Trust asserted the peremptory exception of res judicata, exempting from its plea the lands sold by Harrison, one tract of which had been repurchased by the Harrisons. After a hearing on the exception, the district court rendered judgment severing this claim from the main demand of the Harrison plaintiffs, and sustaining the exception of res judica-ta. It is from that judgment that the Har-risons have appealed.
The Louisiana civil doctrine of res judica-ta is articulated in LSA-R.S. 13:4231 (re-designated as R.S. 13:4231 from former LSA-C.C. art. 2286 pursuant to Acts 1984, No. 331, § 7, eff. Jan. 1, 1985), which provides:
The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality.
LSA-C.C. art. 3556(31) defines “thing adjudged” as follows:
Thing adjudged is said of that which has been decided by a final judgment, from which there can be no appeal, either because the appeal did not lie, or because the time fixed by law for appealing is elapsed, or because it has been confirmed on the appeal.
These provisions establish a presumption of correctness and preclude relit-igation of the object of the judgment when there is (1) an identity of the parties, (2) an identity of the thing demanded and (3) an identity of “cause.” Dornak v. Lafayette General Hospital, 399 So.2d 168 (La.1981); Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978).
Res judicata is stricti juris, and a second suit should not be barred when there is any doubt of the applicability of these provisions. Scurlock Oil Company v. Getty Oil Company, 294 So.2d 810 (La.1974); Hope v. Madison, 194 La. 337, 193 So.666 (1940).
The first element is met here, for there exists an identity of parties for res judicata purposes whenever the same parties, their successors or assigns share the same “quality.” Scurlock Oil Company; Ditch v. Finkelstein, 399 So.2d 1216 (La. App.lst Cir.1981).
As to the second element, plaintiffs contend that the “thing demanded” in the previous litigation was the recognition of re-versionary rights accruing in 1939, while the “thing demanded” in the instant litigation is the recognition of reversionary rights accruing in 1949. Defendant contends that in both the instant suit and the prior litigation, the “thing demanded” (i.e., the relief sought), Quarles v. Lewis, 226 La. 76, 75 So.2d 14 (La.1954) is the same: extinguishment of the mineral servitude burdening Tract “A” of the Harrison lands.
We agree with the plaintiffs’ contentions. As was pointed out in State v. American Sugar Refining Co., 108 La. 603, 32 So. 965 (1902), a case involving a tax for different years under the same contentions and defenses: “The demands for taxes for different years may be as near alike as two peas, but they are not identical. The identity would be in the defense, but the defense is only a reason for judgment and forms no part of the judgment.” Here we are concerned with the accrual of two different periods of prescription and the defense is the interruption by the drilling of different wells.
That the things demanded are not the same is indicated by defendants’ admission that prescription has extinguished the servitude on Tract B, one held valid in the 1943 judgment.
In Mitchell v. Bertolla, 340 So.2d 287, 291 (La.1976), our Supreme Court held that “cause” means “the juridical or material fact which is the basis of the right claimed, or the defense pleaded.” In Dixon, Booksh *321 and Zimmering, Res Judicata in Louisiana Since Hope v. Madison, 51 Tul.L.Rev. 611, 619 (1977), it was stated that:
(Cause) can be likened to “grounds” or “theory of recovery.” This is a narrower concept than the common law “cause of action”: “Cause is the principle upon which a specific demand is grounded while cause of action embraces the cause and the demand, and is related to the party making the demand.” The common law theory of res judicata precludes relitigation of a “cause of action” and, whether actually litigated or not, all grounds in support of the cause of action are merged in the judgment so that relit-igation of the “cause of action” on different grounds is barred. Under the civilian doctrine, however, because “cause” is roughly analogous to “theory of recovery,” a second suit on a different “ground” is not precluded. Thus, with minor exceptions, the common law “might have been pleaded” rule is inapplicable in Louisiana.” (citations omitted.)
One such exception is with respect to petitory actions, in which the common law rule is adopted and res judicata precludes relitigation of causes which the party might have pleaded in the previous action. See Tassin v. Sayes, 386 So.2d 995 (La. App. 3rd Cir. 1980), and authorities cited therein. We find this exception inapplicable here because of the different prescriptive periods, the second of which was not in existence in 1940 and could not have been pleaded then.
Perhaps the rationale of our decision can be better understood by the following analysis. Let us assume for a moment that the Gulf wells had not been drilled in 1939. Plaintiffs could have filed suit for the declaration that the servitude had been lost by ten years’ non-user in the period of 1929 to 1939. But since the wells had been drilled in 1939, the defendant interposed the use as a defense. Only if that defense be accepted does the question of contiguity arise in the determination of the extent of the land affected by the user. Upon the abandonment of the Gulf wells another period of now-user began. This period reached ten years in 1949. The plaintiffs then could urge ten years’ non-user so as to bring to an end the mineral servitude. The defendant then can urge the use of the servitude in the drilling of the H.L. Hunt well in 1949, on entirely separate acreage and at a completely different time. Again the question of contiguity arises to determine the acreage on which the mineral servitude continues. In the 1940 suit the question of contiguity is that of contiguity to the plots upon which the two Gulf wells were drilled. The contiguity at issue in the present suit is that of contiguity to the plot upon which the H.L. Hunt well was drilled. It may very well be that some of the evidence of facts about the ownership of intervening plots in the present suit may be the same or similar to the evidence in the first case. Again we point to the case of State v. American Sugar Refining case in which the similarity of the evidence as to the method of operation did not result in the validity of the res judicata plea.
The “juridical or material fact” which was the basis for the 1939 suit was the accrual of ten years prescription in 1939.
The “juridical or material fact” which is the basis for the present demand is the accrual of prescription in 1949. The drilling of the wells relied on to interrupt prescription are different and widely separated. The question of the. contiguity of the land because of the navigability or non-navigability of the streams is a factor in both suits but is not a “cause” in either.
The issue of the streams becoming navigable since 1943 was not present in the earlier litigation and so cannot be the subject, of a plea of res judicata even if the plea were otherwise available. Appellee’s arguments would have the peremptive exception of res judicata take on the additional tasks of another exception.
For these reasons, the judgment of the trial court sustaining the plea of res judica-ta is reversed and the case is remanded for further proceedings. The appellee is cast for the costs of this appeal. The casting of *322 costs in the trial court is to await the outcome of the proceedings.
REVERSED AND REMANDED.

. The principle that a mineral servitude may be extinguished by prescription resulting from nonuse for ten years is currently found in LSA-R.S. 31:27(1).

. These two servitudes were designated as Tracts "A" and "B.” The extent of the acreage included in these two servitudes was delineated on a map (which is designated "the deArmas map” after its drafter) filed in the cause by joint stipulation and incorporated in the' federal court’s judgment.

. A new ten year prescriptive period began to run as to Tract "A” on June 16, 1939, the date of abandonment of the Gulf No. 1 well.